1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     CESAR ADOLFO CARO,                         No. 2:19-cv-373-MCE-EFB P

12                    Petitioner,

13           v.                                    FINDINGS AND RECOMMENDATIONS

14     CALIFORNIA DEPARTMENT OF
       CORRECTIONS AND
15     REHABILITATION, et al.,

16                    Respondents.

17

18           Petitioner is a California state prisoner who, proceeding with counsel, brings an

19     application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted in the

20     Tulare County Superior Court of conspiracy to commit willful, deliberate, and premeditated

21     murder pursuant to Pen. Code §§ 182(a)(1), 187.  The instant habeas petition raises five claims,

22     specifically: (1) the jury violated his rights by returning inconsistent verdicts; (2) the jury's

23     inconsistent verdicts indicate that it was confused in its deliberations; (3) the trial court erred in

24     failing to reject the verdict based on its inconsistency and evidence of juror confusion; (4) his trial

25     counsel was ineffective in failing to advise him to accept favorable plea deals; and (5) his trial

26     counsel was ineffective in failing to raise an objection after the jury returned its inconsistent

27     verdict.  For the reasons stated below, it is recommended that the petition be denied.

28     /////

                                                    1

# FACTUAL BACKGROUND

## I.    The Shooting

On June 27, 2012, Carlos Perez and his friend, Alejandro Lara, were driving around South Lake Tahoe. The pair spotted Jaheem Barton and Jamal Coffer at a Safeway grocery store. A prior altercation between Barton and one of Perez's cousins had resulted in bad blood between the two men. Matters between them were further aggravated by Perez's belief that Barton had given information to law enforcement which led to the former's conviction for burglary in 2010. Barton saw Perez and Lara drive by and gave a signal with his hands which appeared to challenge them to a fight. Perez decided against fighting Barton at that time, however, because the latter was with his girlfriend and child.

After spotting Barton, Perez assembled others in preparation for a fight. He met and enlisted his cousins, Oscar and Efrain Villagomez. Perez also called petitioner and asked if he would help. Petitioner agreed to do so, and Perez picked him up.

The group drove around searching for Barton and, ultimately found him walking down a street with a group of people. Perez told petitioner that they should get a weapon and the latter agreed. Perez had been planning to buy petitioner's handgun and, consequently, the weapon was at Perez's house. Perez retrieved the gun and petitioner loaded it. Perez told petitioner, in reference to Barton, that he "wanted to make the problem end."

Perez and petitioner drove back to the street where they had seen Barton. Lara and the Villagomez brothers were in a separate car directly behind them. Petitioner was in the forward passenger seat and nearest Barton. Petitioner told Perez he would shoot. As they drove closer and Barton's group began to scatter, petitioner asked Perez whether he should "hit someone or just scare them." Perez told him to "do whatever." Petitioner filed several shots at the fleeing group while Perez drove by.

After the shooting, Perez sped away from the scene. Petitioner ultimately got out of Perez's car and into the one driven by Lara. Lara drove petitioner home and Perez disposed of the handgun by throwing it into a garbage dumpster.

/////

Perez was arrested the following day.  He initially claimed that he had been alone and had not stopped because Barton was with a large group.  Later, he admitted involvement in the shooting, but claimed that Barton had actually shot at him first.   He also told investigators that petitioner had been armed when he first picked him up.

Petitioner discarded his cell phone at some point after the shooting and obtained a new one.  The new phone was seized when he was arrested.  Recovered text messages sent approximately one month after the shooting captured the following exchange:

> **Petitioner**:  "Did you see that car with the nigger came off [sic], the one driving was one of the black guys who was there when I shot at them."
>
> **Petitioner's Girlfriend**: "Really? Do you think they recognized you?"
>
> **Petitioner**:  "IDK [I don't know].  That's why I told you to go inside. Fuck all that. Ha ha."

## II.  Defense Case

Petitioner testified that, on the day of the shooting, Perez had sent him a text asking if he would "have his back" in a fight.  Perez told petitioner that Barton had challenged him to fight; the latter testified that he understood this to mean a fistfight.  Perez picked petitioner up and, at some point, petitioner noticed that Perez had a handgun on his waistband.  Petitioner testified that he urged Perez not to use it.  He also claimed that the two never stopped at Perez's house, but only "passed by."

When Barton's group was spotted, Perez ordered petitioner to shoot at them.  Petitioner testified that he refused to do so.  Perez then threatened harm to petitioner and his family if he ever told anyone about what Perez was about to do.  Petitioner moved from the front passenger seat to the rear of the vehicle.  Perez shot at the group and drove away from the scene.  They returned to Perez's house and did not speak of the shooting.  Petitioner then went home.

Petitioner also testified that he did not own the gun involved in the shooting and had never seen it before that day.  He characterized the decision to dispose of his old cellphone as a severing of ties with Perez, because it had been given to him by the latter.  Petitioner explained the texts to his girlfriend by stating that Perez had told him to take the blame for the shooting.

3

III.     Trial Outcome

Petitioner was charged with conspiracy to commit first degree murder (Pen. Code, §§ 182, subd. (a)(1); 187, subd. (a)) and attempted first degree murder (§§ 664; 187, subd. (a)).  He was also charged with using a firearm in connection with the foregoing counts (§§ 12022.53, subd. (b) & 12022.5, subd. (a)).  Finally, it was alleged that petitioner had sustained a prior "strike" conviction.

The jury found petitioner guilty of the conspiracy charge.  It found neither firearm enhancement to be true.  The jury was unable to reach a verdict on the attempted murder charge and a mistrial was declared on that count.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I.     Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).  If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100

4

(2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

### A.     "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

### B.     "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia

5

Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Harrington*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Harrington*, 562 U.S. at 101-102.

C.     "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to

7

consider and weigh relevant evidence that was properly presented to it.  *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2).  *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding.  *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002)  (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II.     The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards.  *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc).  There is no single prescribed order in which these two inquiries must be conducted.  *Id.* at 736 37.  The AEDPA does not require the federal habeas court to adopt any one methodology.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap.
*/////*

Accordingly, "[a] holding on habeas review that a state court error meets the § 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

<u>DISCUSSION</u>

I.      <u>Inconsistent Verdict Claims</u>[4]

As noted *supra*, petitioner raises claims related to the jury's allegedly inconsistent verdict: (1) the jury violated his rights by returning inconsistent verdicts; (2) the jury's inconsistent verdicts indicate that it was confused in its deliberations; and (3) the trial court erred in failing to reject the verdict based on its inconsistency and evidence of juror confusion.[5]

/////

---

[4] The court will discuss petitioner's claim that his trial counsel rendered ineffective assistance by failing to object to the inconsistent verdict in the next section.

[5] Although these three claims are distinct, the court finds it appropriate to analyze them jointly insofar as all relate to the issue of the allegedly inconsistent verdict.

1      A.      State Court Decision

2          The state court of appeal issued the last reasoned decision on these claims when it rejected

3   them on direct appeal:

> Defendant contends the jury returned inconsistent verdicts, the verdicts indicated the jury was confused in its deliberations, and the court erred in failing to grant a new trial on the ground of inconsistent verdicts and jury confusion. We disagree.
>
> Defendant notes the jury asked certain questions. The jury asked whether it had to agree on all four elements of conspiracy or whether it was enough if they agreed on just two of the four elements; (2) whether the instruction on conspiracy meant to say defendant or one of the coconspirators committed at least one of the overt acts alleged to "attempt to kill" (rather than "accomplish the killing" as instructed); (3) whether the jury could find defendant guilty of attempted murder through aiding and abetting but find the additional allegation of deliberation and premeditation not true; and (4) whether the instruction on attempted murder meant to refer to defendant as well as Perez (rather than just defendant) since the additional allegation of premeditation and deliberation referred to both defendant and Perez.
>
> The court referred the jury to the instruction that stated "'[t]he defendant or any of the alleged co-conspirators committed at least one of the following overt acts alleged to accomplish the killing.'" The court stated the instruction was very clear and would not give the jury additional direction. After consulting with counsel, the court reread the instruction on conspiracy to commit murder. The trial court later reread other instructions in response to other questions from the jury, including instructions on aiding and abetting, attempted murder, and deliberation and premeditation.
>
> Defendant argues the jury's questions reflect its confusion in deliberations, which led to the inconsistent verdicts, and it "either ignored the jury instructions or misunderstood them." The jury was split 11-to-one, with 11 jurors believing defendant was not guilty of attempted murder. Had the jury followed the instructions, defendant argues, the jury had but two options: (1) find defendant guilty of conspiracy and guilty of attempted murder or (2) find defendant not guilty of attempted murder and not guilty of conspiracy. Defendant claims that having failed to find him guilty of attempted murder, the elements necessary for conspiracy were negated since counts 1 and 2 were linked together. By finding him guilty of conspiracy to commit first degree murder, defendant claims, the jury had to find the conspiracy was undertaken willfully, deliberately, and with premeditation. Defendant argues the jury was confused because the jury found he "had not acted willfully, deliberately, and with premeditation in his alleged role in the shooting at Jaheem Barton (by an 11-1 vote) while at the same time the jury found that [defendant] had acted willfully and deliberately in his role as a conspirator in allegedly planning this attempt to murder." Defendant claims the jury was confused because it asked four questions. Finally,

defendant claims the trial court erred in denying his motion for a new trial based on the ground the jury returned inconsistent verdicts, which indicated that they were confused.

The jury's deadlock on attempted murder is not a verdict but instead a "nonevent that does not bar retrial." (*Yeager v. United States* (2009) 557 U.S. 110, 118, [174 L. Ed. 2d 78, 87], 129 S. Ct. 2360.) "To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did not return." (*Id.* at pp. 121-122, fn. omitted.) "[T]he fact that a jury hangs is evidence of nothing—other than, of course, that it has failed to decide anything." (*Id.* at p. 125.)

Further, even assuming the jury reached a verdict of an acquittal on attempted murder, an inherently inconsistent verdict is allowed to stand even if "factually irreconcilable with a conviction on another." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911, 35 Cal. Rptr. 2d 624, 884 P.2d 81.) A limited exception applies when the conspiracy count alleges overt acts identical to the crime charged in another count. (*In re Johnston* (1935) 3 Cal.2d 32, 33-34, 43 P.2d 541.) *Johnston* reversed a conspiracy conviction because the jury had acquitted the defendants on the remaining substantive counts, which meant none of the overt acts had been committed. (*Id.* at pp. 34-36.) Here, even assuming a verdict of acquittal on the attempted murder, *Johnston* would not compel reversal of the conspiracy count.

"'A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.' [Citations.]" (*People v. Johnson* (2013) 57 Cal.4th 250, 257, 159 Cal. Rptr. 3d 70, 303 P.3d 379.) "Criminal activity exists along a continuum. . . . 'An attempt to commit a crime consists of . . . a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' [Citation.]" (*Id.* at pp. 257-258.) "Conspiracy law attaches culpability at an earlier point along the continuum than attempt. 'Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.' [Citations.] Conspiracy separately punishes not the completed crime, or even its attempt. The crime of conspiracy punishes the agreement itself and 'does not require the commission of the substantive offense that is the object of the conspiracy.' [Citation.]" (*Id.* at p. 258.) "Once one of the conspirators has performed an overt act in furtherance of the agreement, 'the association becomes an active force, it is the agreement, not the overt act, which is punishable. Hence the overt act need not amount to a criminal attempt and it need not be criminal in itself.' [Citations.]" (*Id.* at p. 259.)

To convict defendant of conspiracy to commit first degree murder, the jury had to find (1) defendant intended to agree and did agree with at least one coconspirator to kill Barton, (2) at the time of the agreement, defendant and at least one coconspirator intended that one or more of the conspirators would intentionally and unlawfully kill Barton, (3) defendant or any coconspirator committed at least one overt act in furtherance of the conspiracy, and (4) at least one overt act occurred in California.

The jury convicted defendant of conspiracy to commit murder, finding certain overt acts to be true: Defendant "1. [] did gather together with Carlos Perez, Alejandro Lara, Efrain Villagomez and Oscar Villagomez, to seek out and confront Jaheem Barton on June 27, 2012 in El Dorado County," that defendant "2. [] did seek out and confront Jaheem Barton [on the same date and county]," and that defendant "5. [] did, while with Carlos Perez, try to locate Jamal Coffer at St. Theresa's Church and again on the walking path near Jack-In-The-Box [on the same date and county]." [6]

To convict defendant of attempted murder, the jury had to find (1) defendant took at least one direct but ineffective step toward killing another person, meaning a step that goes beyond planning or preparation showing a definite and unambiguous intent to kill after preparations have been made, and (2) defendant intended to kill that person. The additional allegation that the attempted murder was done willfully, and with deliberation and premeditation, required the People to prove that defendant or Perez intended to kill when he acted, carefully weighed the consequences and decided to kill, and made the decision to kill before acting.

The elements of the two offenses were different. The jury could have found defendant guilty on one but not the other. The jury's verdict of guilty on conspiracy to commit attempted murder is not inconsistent with a "nonevent," i.e., the jury's deadlock on attempted murder. For example, the jury could have found defendant conspired with Perez to kill Barton but defendant never took a step that went beyond planning, which showed an unambiguous intent to kill. Further, unlike the defendants in *Johnston*, defendant was not acquitted of the substantive offense.

In his new trial motion, defendant raised the same argument, that is, the jury returned inconsistent verdicts indicating the jury was confused. The prosecutor replied simply, a hung jury is not the same as a not guilty verdict, and the conspiracy to commit murder was completed before the crime of attempted murder began. The trial court denied defendant's new trial motion.

---

[6] **[footnote four in original text]** The jury did not make any findings, either true or not true, on the following overt acts: "3. [] did arm himself in preparation of shooting Jaheem Barton[;] [¶] 4. [] did position himself with Carlos Perez's vehicle to facilitate the shooting of Jaheem Barton[;] [¶] . . . . [¶] 6. [] did coordinate their final attack on Bonanza Street with [Lara, Oscar, and Efrain] while their cars were together[;] [¶] 7. [] did, after final discussion of this imminent shooting, load live rounds into the firearm, rendering it ready for use."

> Defendant relies upon *In re Johnston*, *supra*, 3 Cal.2d 32 in support of his argument that the jury's inconsistent verdicts constitute grounds for a new trial. Having previously concluded that Johnston has no application here, we conclude the trial court did not err in denying defendant's new trial motion.

ECF No. 10-1 at 5-9. Petitioner subsequently raised these claims in a habeas petition filed in the California Supreme Court (ECF No. 10-7 at 76-90); the California Supreme Court summarily denied the petition (ECF No. 10-8).

### B. Relevant Federal Law

The Supreme Court has never recognized a federal constitutional right to a consistent verdict. *See Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.").

### C. Analysis

As noted *supra*, under AEDPA this court asks only whether the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See Hurles v. Ryan*, 914 F.3d 1236, 1237 (9th Cir. 2019) ("Clearly established law is limited to the Supreme Court's holdings at the time of the state court decision."). The Supreme Court's holding that inconsistent verdicts do not violate a defendant's federal rights forecloses any argument on this issue.

### II. Ineffective Assistance of Counsel

Next, petitioner contends that his trial counsel was ineffective in: (1) failing to advise him to accept a favorable plea deal; and (2) failing to object to the allegedly inconsistent verdict.

////

////

13

A.      Failure to Advise Petitioner to Accept a Favorable Plea Deal

1.      State Court Decision

The state court of appeal (on direct appeal) rejected petitioner's claim that his trial counsel was ineffective in failing to advise him as to a plea offer:

> Defendant contends defense counsel rendered ineffective assistance in advising him to reject two plea offers. The record refutes defendant's claim.
>
> On January 11, 2013, the prosecutor offered an eight-year prison deal, which he planned to withdraw later that day. Defense counsel said he met with defendant, advised him of the offer, and defendant desired to proceed to trial, even though he had seen the discovery, reflecting he could be charged with attempted murder and a 20-year gun enhancement, as well as a strike prior. Defense counsel said defendant wished to go forward to trial. When asked if that was correct, defendant responded, "Yes, sir." The court advised defendant that the prosecutor was not required to make additional offers. Defense counsel stated it would be "an honor to represent" defendant, he (defense counsel) was "certainly not disappointed" defendant chose not to accept the offer, and he (defense counsel) would "go all the way" with defendant. Defendant thanked defense counsel and a preliminary hearing was set.
>
> On March 26, 2013, the prosecutor said defendant made a counter offer of five years, which the prosecutor stated was too low. The prosecutor made two offers, one for a six-year prison term on the present case with credits waived and the other offer for six years on the present case and a consecutive eight-month term on another case with credits. The offers were open for two days to March 28, 2013, for defendant to consider.
>
> At the preliminary hearing held on May 28, 2013, the prosecutor noted there had been "substantial negotiation" but there was currently no offer and there would be no offer after the preliminary hearing. Defense counsel stated he met with defendant, defendant did not want to settle, and defendant wanted to proceed to jury trial. When asked if that was correct, defendant responded, "Yes." Defense counsel said he and defendant "talked it out forever" and they were "ready to go."
>
> To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [104 S. Ct. 2052, 80 L.Ed.2d 674, 693]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218, 233 Cal. Rptr. 404, 729 P.2d 839.)
>
> "In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the

14

offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938, 8 Cal. Rptr. 2d 713, 830 P.2d 747, italics omitted.)

Despite defendant's claim otherwise, there is nothing in the record that reflects defense counsel "strongly recommended" to defendant that he reject the offers or that defense counsel gave poor advice. As defendant concedes, the record on appeal "does not and cannot fully support the [ineffective assistance of counsel] claim." Defendant's reliance upon the disparity in the offer and his ultimate sentence is not sufficient alone to show ineffective assistance of counsel.

Defendant's reliance upon *Lafler v. Cooper* (2012) 566 U.S. 156 [132 S. Ct. 1376, 182 L.Ed.2d 398] is misplaced. In *Lafler*, all parties conceded the defense attorney gave legally incorrect advice which constituted deficient performance and the only question was whether the defendant suffered prejudice as a result. (*Id.* at pp. 160-162, 174.) Nothing in the record here reflects either defense counsel advised defendant to reject the offers or provided poor advice. Even if, for example, defense counsel misjudged the strength of the district attorney's case in advising defendant about an offer, such advice alone is not deficient performance. (*In re Alvernaz, supra*, 2 Cal.4th at p. 937.) Defendant's ineffective assistance claim fails.

ECF No. 10-1 at 9-11.

Petitioner raised this claim again on collateral review. On September 27, 2018, he simultaneously filed a petition in the California Supreme Court and in the El Dorado County Superior Court. ECF Nos. 10-5 & 10-7. Therein petitioner added – for the first time – a declaration which gave his account of pre-trial interactions with his counsel. ECF No. 10-5 at 82-85; 10-7 at 53-56. On October 5, 2018, the superior court issued a reasoned decision denying his claim:

Petitioner alleges he was denied effective counsel when his trial attorney recommended that he not accept a plea offer of six years. He argues that the disparity between what Caro was willing to accept (5 years), the offer of 6 years, and the sentenced he received after trial (50 years to life) indicates his trial attorney failed to properly advise him and fully explain what he was facing.

15

A criminal complaint was filed on October 30, 2012, charging petitioner with assault with a firearm, a felony offense. Petitioner was arraigned on the complaint and appointed counsel on November 2, 2012. His trial attorney, Mr. Clark, was appointed to represent the petitioner on November 13, 2012. Several pre· preliminary hearings were set and continued. On January 11, 2013, petitioner and his counsel appeared for a pre·preliminary hearing. At the hearing the prosecutor extended an offer of eight years in prison. He explained his willingness to be lenient ends today. The prosecutor then stated he believed he understood petitioner would be declining the offer, however he believed the petitioner would be held to answer after a preliminary hearing for attempted murder. The following is from the prosecutor's statement extending the 8 year offer: "[W]hat he should be asking himself is what he is going to look like when he's 80 years old and going before the parole board asking for his first possible release after his life term with the strikes and special allegations". The petitioner was born in 1993. Petitioner's attorney commented that he had met with petitioner, gave him a copy of the discovery and conveyed the eight year offer. He explained to petitioner how the case could be charged with attempted murder, an additional 20 year enhancement, and discussed the fact he had a strike. Mr. Clark then stated, "I met with the gentlemen Tuesday and it was his indication, his decision, he wants to go forward. I met with Mr. Sears (prosecutor) outside this courtroom today; I communicated to Mr. Caro what Mr. Sears just articulated to this court. I believe, it's the gentleman's desire to go forward with this litigation. After a brief comment by the judge, Mr. Clark stated: "I'm certainly not disappointed in any way he's not accepting the People's offer .... I'll go all the way with you, if necessary." Thereafter, an amended criminal complaint was filed January 11, 2013, alleging additional allegations of personal use of a firearm and a prior strike conviction.

Several pre-preliminary hearings were held between January 11 and March 26, 2013. On March 26th, the prosecutor made a six year offer which would expire later that week. It was agreed that if petitioner wanted to accept the offer counsel would arrange a date to handle the matter.

Just before the preliminary hearing commenced on May 28, 2013, the prosecutor advised the court that they had substantial negotiations in court, in chambers, and outside court. He pointed out that he could not engage in plea negotiations after the preliminary hearing. Mr. Clark responded by adding he believed that the petitioner does not want to settle and that he wanted to go forward with his jury trial. He concluded, "We talked and talked it out forever."

The Preliminary Hearing Judge then commented, "I think Mr. Caro is fully aware of what the stakes are, believes himself to be not guilty of the charges, and has a constitutional right to proceed." At least one of the minute orders reveal a chambers conference that was unreported. The preliminary hearing was conducted and petitioner was bound over for trial.

In petitioner's declaration, he acknowledges he was charged with conspiracy to commit murder with a strike allegation and further, he pled not guilty and denied the allegations.

He acknowledged receiving a six year offer and stated "I rejected it on the advice of my attorney." Petitioner then proceeded to clarify why he rejected the offer, "I rejected the offer of 6 years because I was told by attorney James Clark the District Attorney had a weak case and the likelihood of conviction was very slight."

If defense counsel misjudged the strength of the district attorney's case in advising the defendant about an offer, such advice alone is not deficient performance. *In re Alvernaz* (1992) 2 Cal. 4th 924,937. A review of the Court file does not reveal any statements made by Mr. Clark from which an inference can be made that he suggested or urged petitioner to reject any offer. On the contrary, Mr. Clark when referring to his client's rejection of an offer used words such as "it was his indication", "his decision", "he wants to go forward", and "I believe it's the gentleman's desire to go forward with this litigation."

Petitioner stated, "We never discussed what a strike enhancement would add to my sentence," and "The effect of any gun use on my sentencing, if convicted, was never discussed" and "I was never told that I faced a possible sentence of 50 years to life if convicted." As indicated above, Mr. Clark stated on the record how the case could be charged with attempted murder and how an additional 20 year enhancement could be charged. Further, as indicated above, Mr. Clark stated on the record he discussed with the petitioner the fact he had a strike. Petitioner was present when the prosecutor asked him what it would be like to be eighty years old and asking for his first release after a life term. It is reasonable to infer that if the petitioner had not discussed a life sentence with Mr. Clark, he would have immediately reacted either in court or with Mr. Clark.

Petitioner stated, "The total time we spent discussing the possibility of accepting a plea bargain, whether that be the initial offer of 8 years or the final offer of 6 years, was approximately 30 minutes." This statement must be viewed in light of the many pre·preliminary hearing conferences where the petitioner was present, the prosecutor's statement they had substantial negotiations in court, in chambers, and outside chambers. It must also be viewed with Mr. Clark's statement in mind-" we talked and talked it out forever". Petitioner's argument that Mr. Clark failed to take the time and effort to properly advise is not supported by the objective evidence.

Petitioner concludes by stating, "I would have accepted the plea offer of 6 years had I known that I was facing a sentence of 50 years of life". He was present when the prosecutor asked him to image being 80 years old after a life sentence.

This court concludes that Mr. Clark actually and accurately communicated the offers to petitioner. The Court has considered the lack of any advice given to the petitioner on the record (counsel was careful to not reveal specific conversations concerning advice given to petitioner), the statement concerning high stakes and a life term by

the prosecutor, the judge's comment about his belief the petitioner was fully aware of the high stakes, ·the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer, and the fact petitioner was amenable to negotiating a plea bargain (he proposed 5 years). The Court has also considered Mr. Clark's consistent statements concerning the petitioner's reaction to offers such as, "it is his decision", "his desire", and "he does not want to settle."

This Court concludes that petitioner's self-serving statements in his declaration are not corroborated independently by objective evidence. The evidence before this court is that petitioner wanted 5 years or he was going to trial. Petitioner's desire to have a trial was consistently evident during discussions on the record at all of the pre-preliminary hearings. The objective evidence indicates the petitioner was aware of a possible life sentence before the preliminary hearing commenced. It is also abundantly clear petitioner could have accepted the 6 year offer on the day of the preliminary hearing. It is clear the record is devoid of any statement or advice that Mr. Clark made regarding recommending or urging petitioner to reject the offer. It is reasonable to infer from the record and Mr. Clark' statement "we talked and talked it out forever" included discussions of the effect of a strike enhancement sentence and the possibility of a conviction resulting in a life sentence. Mr. Clark's representation of petitioner did not fall below an objective standard of reasonableness under prevailing professional norms. In addition, this Court concludes Mr. Clark, in his discussions with petitioner, fully advised him of the consequences of receiving a life sentence after trial.

ECF No. 10-6 at 4-8. On February 27, 2019, the California Supreme Court issued a summary denial of the petition. ECF No. 10-8.

In his traverse, petitioner argues that the superior court's reasoned decision should be disregarded. He contends that he submitted his petition to that court only as a "courtesy copy" and that its ruling was unsolicited. ECF No. 11 at 4-5. But there is no indication that the superior court's ruling was ever vacated – as would be proper if petitioner's account of events is accurate. Absent such indication, petitioner is asking this court to wade into the realm of state law and judge which opinions are valid and which are not. It is not empowered to do so. Regardless, petitioner's claim fails whether this court recognizes the validity of the superior court's decision or not.

### 2. Relevant Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To

succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. And the Supreme Court has cautioned that strict adherence to the *Strickland* standard is especially crucial when reviewing an attorney's performance at the plea bargain stage. *Premo v. Moore*, 562 U.S. 115, 125 (2011). In *Premo*, the Supreme Court identified two reasons to hew closely to the foregoing standard in the plea context:

> First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.
>
> . . .
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. Strickland allows a defendant 'to escape rules of waiver and forfeiture[.]' Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of

19

AEDPA and the teachings of Strickland. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude Strickland mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.*

### 3.    Analysis

As noted *supra*, the superior court rendered a determination of the facts and concluded that trial counsel "actually and accurately communicated the offers to petitioner." ECF No. 10-6 at 7. It also found that "petitioner's self-serving statements in his declaration [were] not corroborated independently by objective evidence." *Id.* These determinations of fact are entitled to deference unless petitioner can show that they were objectively unreasonable. *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (stating that "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"). With regard to the meaning of "unreasonable," the Ninth Circuit has stated:

> Regardless of the type of challenge, [t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold. Thus, if a petitioner challenges the substance of the state court's findings, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. Similarly, when the challenge is to the state court's procedure, mere doubt as to the adequacy of the state court's findings of fact is insufficient; we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.

*Hibbler v. Benedetti*, 693 F.3d 1140, 1146-47 (9th Cir. 2012) (internal quotation marks and citations omitted).

The superior court's findings in this instance were not objectively unreasonable. As the superior court notes, trial counsel stated on the record that he had discussed plea offers with petitioner and the latter did not want to settle. ECF No. 10-10 at 16 (Clerk's Transcript on

20

Appeal Vol. 2). Trial counsel also stated that he and petitioner had "talked and talked it out forever." *Id.* The trial court then stated its opinion that "I think [petitioner] is fully aware of what the stakes are, believes himself to be not guilty of the charges, and has a constitutional right to proceed." *Id.* The court finds that, in light of the foregoing, the superior court's finding of fact was not objectively unreasonable.

And, even if the superior court's decision is discounted, the last reasoned decision by the court of appeal[7] is sufficient to reject this claim under AEDPA. The court of appeal reasonably found that the record did not support petitioner's claims regarding his counsel's deficient performance. ECF No. 10-1 at 10-11. In so doing, the court of appeal quoted *In re Alvernaz*, 2 Cal. 4th 924, 938 (1992) for the proposition that "a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." Thus, the addition of petitioner's self-serving declaration would not have altered the court of appeal's analysis of this claim.

Finally, the court notes that petitioner's reliance on the Supreme Court's decisions in *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye*, 566 U.S. 134 (2012) is misplaced. In *Lafler*, it was conceded by all parties that counsel misstated the law when he informed his client that he could not be convicted of assault with intent to murder for gunshots that hit below the victim's waist. 566 U.S. at 174. There is no allegation that counsel explicitly misstated the law here. In *Frye*, counsel failed to communicate a plea deal to the defendant before its expiration. 566 U.S. at 134. Petitioner does not allege that his trial counsel wholly failed to communicate a plea deal in this case.

/////

---

[7] The court recognizes that petitioner's declaration – added on collateral review – was not before the court of appeal. Thus, the inquiry becomes, "in light of the evidence before the California Supreme Court—the last state court to review the claim—it would have been reasonable to reject Petitioner's allegation of deficient performance for any of the reasons expressed by the court of appeal." *See Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir. 2013).

B.     Failure to Challenge Inconsistent Verdict

1.     State Court Decision

The state superior court rejected this claim on collateral review:

> Petitioner argues the jury was required to state "true" or "not true" on each of the listed overt acts on the Conspiracy charge. He concludes his attorney had a duty to provide effective representation as to the issues raised by "the problematic jury verdict form". Petitioner argues that the verdict form on the overt acts did not include any findings that would logically lead to a murder such as arming himself, loading a weapon, and positioning himself so as to be able to fire a weapon. The appellate court noted in a footnote the fact that the jury had not made a finding of true or not true on four overt acts alleged. The jury found three of the seven alleged overt acts true. As stated above, the People need only prove one overt act. Petitioner argues that in order for petitioner to be found guilty of conspiracy to commit murder at least one member of the conspiracy must have attempted to murder Jaheem Barton and Jamal Coffer. This issue was addressed by the appellate court when it reasoned the overt act need not amount to a criminal attempt and it need not be criminal itself. The failure of the jury to make findings on four overt acts did not affect the verdict reached on the conspiracy charge.

> In view of the fact the jury found three overt acts were true, Mr. Clark could have elected not to request further deliberation. The jury was deadlocked 11 - 1 for not guilty on the attempted murder charge. Thus, did Mr. Clark have reasons for not requesting further deliberations on the overt acts in order to complete the verdict form as to those acts? The four: unanswered overt acts were: I) whether the petitioner armed himself in preparation of shooting, 2) whether petitioner positioned himself with the vehicle to facilitate the shooting, 3) whether petitioner coordinated the final attack on the victims while their cars were together, and 4) whether petitioner did, after final discussion of the imminent shooting, load live rounds into the firearm, rendering it ready for use. Further deliberation on these overt acts would also lead to further discussion of the attempted murder charge. That deliberation could have resulted in the jury voting to convict petitioner of the attempted murder charge if they found those overt acts true. Conversely, if they found those overt acts not true it would have had no effect on the conspiracy charge (verdict). Mr. Clark's actions were clearly reasonable.

ECF No. 10-6 at 3-4.

Petitioner subsequently raised this claim in a habeas petition filed in the California Supreme Court (ECF No. 10-7 at 92); the California Supreme Court summarily denied the petition (ECF No. 10-8). Thus, the state superior court rendered the last reasoned decision on this claim.

/////

1        2.      Relevant Federal Law

2        The general principles of *Strickland* – set forth *supra* – are applicable here.

3        3.      Analysis

4        This court is bound by the Superior Court's interpretation of California law.  *See*

5 *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal

6 habeas court).[8]  Thus, this court may not second-guess the superior court's determination that,

7 under California law, "[t]he failure of the jury to make findings on four overt acts did not affect

8 the verdict reached on the conspiracy charge."  It necessarily follows that petitioner cannot

9 establish prejudice from his counsel's failure to object.  *See Lockhart v. Fretwell*, 506 U.S. 364,

10 374 (1993) (holding that failing to raise a meritless objection cannot constitute prejudice under a

11 *Strickland* ineffective assistance of counsel claim).

12       Additionally, the superior court's determination that trial counsel's decision was tactically

13 defensible was not objectively unreasonable.  *Strickland* directs that the reviewing court "should

14 recognize that counsel is strongly presumed to have rendered adequate assistance and made all

15 significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  The

16 court agrees with respondent that a fair-minded jurist could agree with the superior court's

17 assessment.

18                              CONCLUSION

19       For all the reasons explained above, the state courts' denial of petitioner's claims was not

20 objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS

21 HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

22       These findings and recommendations are submitted to the United States District Judge

23 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24 after being served with these findings and recommendations, any party may file written

25 objections with the court and serve a copy on all parties.  Such a document should be captioned

26 _____

27       [8] The court would also reject this claim even if it were to disregard the superior court's
decision.  The court of appeal previously held that the verdict was not inconsistent under
California law.  ECF No. 10-1 at 9.  Thus, petitioner cannot establish the requisite prejudice under
28 *Strickland*.

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  December 16, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE